**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **PACC CONTAINER LINE PTE. LTD.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **C.A. NO. 3:21-cv-0038** |
| | § | **ADMIRALTY** |
| **GULF COPPER AND** | § | **F.R.C.P. 9(h)** |
| **MANUFACTURING CORPORATION** | § | |
| **d/b/a GULF COPPER DRY DOCK AND** | § | |
| **RIG REPAIR** | § | |
| | § | |
| **Defendant.** | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

Plaintiff, PACC Container Line Pte. Ltd. ("PACC"), by and through its attorneys, Royston, Rayzor, Vickery & Williams, LLP, as and for their Original Complaint against Defendant, Gulf Copper and Manufacturing Corporation d/b/a Gulf Copper Dry Dock and Rig Repair ("Gulf Copper"), allege upon information and belief as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, as this matter arises out of a breach of a maritime contract and certain maritime torts.  This Court has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. § 1333.  The Court also has supplemental jurisdiction over any and all state law causes of action pursuant to 28 U.S.C. § 1367.

2.      Additionally, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as there exists diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

3.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the subject claims occurred within this District.

## THE PARTIES

4.      At all times material, PACC, was and is a foreign business entity with a principal place of business at No 1, Kim Seng Promenade, #07-02, Great World City, Singapore 237994 and was engaged in the business of common carriage by water for hire.

5.      At all times material, Gulf Copper, was a Texas for-profit corporation with a place of business at 2920 Todd Road, Galveston, Texas.

## FACTS

6.      This below claims arise out of fire, smoke, water, and/or other damage to eight (8) nacelles and various rubber cargoes transported aboard the M/V PAC ALTAIR (the "Vessel"), voyage no. 499X, from Belawan, Indonesia, Phuket, Thailand, and Chennai, India to Galveston, Texas and New Orleans, Louisiana.

7.      At all times material, PACC was the time charterer of the M/V PAC ALTAIR (the "Vessel") and entered into subcontracts with various cargo interests for the ocean carriage of the aforementioned cargoes.

8.      Specifically, DSV Air & Sea, Inc. ("DSV") entered into a contract with PACC under which PACC was obligated to transport the nacelles from either Chennai to Galveston. Various other cargo interests entered into contracts of carriage with PACC for the ocean carriage of the rubber cargoes to New Orleans.

9.      Gulf Copper was hired by PACC to remove steel stoppers (the "hot work") used for securing the nacelles on the Vessel's tween deck upon the Vessel's arrival in Galveston.  Prior

to Gulf Copper's agreement to perform the hotwork, Gulf Copper provided PACC a standard rate sheet and a quotation by way of letter.

10.     Gulf Copper personnel arrived at the Vessel on February 21, 2020 to commence the hotwork and issued a "Hot Work Permit."

11.     At 1606 hours on February 21, 2020, Gulf Copper commenced hot work in Hold No. 5.

12.     At 1630 hours, the Vessel's fire watch noted smoke emanating from the tween deck pontoons aft section.

13.     Thereafter, the hatch covers were closed and the hold was flooded with carbon dioxide.  The fire was eventually extinguished.

14.     After the fire, Gulf Copper employed a cold cutting technique to remove the remaining stoppers.

15.     Between February 23 and 25, 2020 eight nacelles were discharged from Hold No. 5.

16.     Thereafter, the Vessel departed from Galveston and subsequently discharged the rubber cargoes in New Orleans.

17.     Upon information and belief, the nacelles and rubber cargoes suffered various forms of damage as a result of the fire and its extinguishment.

18.     In addition. PACC suffered various expenses as a result of the incident, including, but not limited to, additional costs associated with the discharge of the cargoes and cleaning of the hold.

19.     On February 20, 2021, DSV commenced an arbitration proceeding against PACC to recover damages sufferd by the nacelles resulting from the fire.

20.     Although PACC is presently unaware as to whether the remaining cargo interests have commenced lawsuits or arbitration proceedings against PACC to recover for damages to the rubber cargoes, PACC anticipates that such proceedings may be commenced.

## FIRST CAUSE OF ACTION—BREACH OF CONTRACT

21.     PACC repeats and realleges each and every allegation contained in Paragraphs 1 through 20 of this Original Complaint as if fully set forth herein.

22.     PACC and Gulf Copper entered into a contract under which Gulf Copper agreed to provide the aforementioned hotwork services in exchange for payment from PACC.

23.     At no time has PACC breached this agreement.  Pursuant to the implied terms of this agreement, Gulf Copper was legally obligated to provide the hotwork services in a workmanlike manner.

24.     Accordingly, Gulf Copper, had the duty to perform the hotwork services with reasonable care, skill, and diligence.

25.     Gulf Copper failed to perform the hotwork services with reasonable care, skill, and diligence not only in breach of the implied agreement of workmanlike services owed to PACC, but also in breach of Gulf Copper's express duties under the contract.

26.     Among other things, Gulf Copper failed to: (1) properly man and equip a fire watch or ensure that there was an adequate fire watch during the hotwork; (2) failed to properly prepare or properly inspect the preparations made to the Vessel's crew prior to commencing the hotwork; (3) consider and apprise the nature of the sealing tape and the sealing of the below holds; (4) consider the fact that combustible cargo was loaded in the below holds; and (5) consider the use of grinders or other equipment (known as cold cutting methods) as a safer means of removing the stoppers.

27.     As a result of Gulf Copper's breach of contract, PACC has and will continue incur damages, legal fees, and other costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION—NEGLIGENCE

28.     PACC repeats and realleges each and every allegation contained in Paragraphs 1 through 27 of this Original Complaint as if fully set forth herein.

29.     Gulf Copper was negligent in performing the hotwork services.   Among other things, Gulf Copper's negligent acts and omissions were as follows: (1) failure to properly man and equip a fire watch or ensure that there was an adequate fire watch during the hotwork; (2) failure to properly prepare or properly inspect the preparations made to the Vessel's crew prior to commencing the hotwork; (3) failure to consider and apprise the nature of the sealing tape and the sealing of the below holds; (4) failure to consider the fact that combustible cargo was loaded in the below holds; and (5) failure to consider the use of grinders or other equipment (known as cold cutting methods) as a safer means of removing the stoppers.

30.     As a direct and proximate result of Gulf Copper's negligence, PACC has and will continue incur damages, legal fees, and other costs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION—INDEMNITY

31.     PACC repeats and realleges each and every allegation contained in Paragraphs 1 through 30 of this Original Complaint as if fully set forth herein.

32.     Any and all damages claimed by DSV in the aforementioned London Arbitration were directly and proximately caused by the wrongful and negligent acts and omissions of Gulf Copper.

33.     Under the circumstances presented, PACC is entitled to indemnification from Gulf Copper for all amounts incurred, including, but not limited to legal fees and costs, based upon the wrongful and negligent acts and omissions of Gulf Copper in an amount to be determined at trial.

## FORTH CAUSE OF ACTION—CONTRIBUTION

34.     PACC repeats and realleges each and every allegation contained in Paragraphs 1 through 33 of this Original Complaint as if fully set forth herein.

35.     The damages claimed by DSV in the London Arbitration were directly and proximately caused by the wrongful and negligent acts and omissions of Gulf Copper.

36.     Under the circumstances presented, PACC is entitled to contribution from Gulf Copper for all amounts incurred based upon the wrongful and negligent acts and omissions of Gulf Copper in an amount to be determined at trial.

## NOTICE REGARDING INTERESTED PARTIES

37.     PACC brings this lawsuit for itself and, as necessary, as representative, agent and/or trustee for every person or entity, including each insurer, which otherwise is or may become interested in the claims asserted herein.

**WHEREFORE**, PACC Container Line Pte. Ltd. respectfully demands: (a) monetary judgement against Gulf Copper on each of these causes of action in an amount to be determined at trial, together with interest thereon; and (b) such other and further relief as the Court deems just, proper and equitable.

Respectfully submitted,

By: _*/s/ Richard A. Branca*_
David R. Walker
State Bar No. 20696800
Federal I.D. No. 2827
david.walker@roystonlaw.com
The Hunter Building
306–22nd Street, Suite 301
Galveston, TX  77550-1589
Telephone:     (409) 763-1623

Richard A. Branca
State Bar No. 24044758
Federal I.D. No. 828076
richard.branca@roystonlaw.com
1600 Smith Street, Suite 5000
Houston, Texas 77002-7380
Telephone (713) 224-8380
Facsimile  (713) 225-9545

**ATTORNEYS FOR PLAINTIFF**
**PACC CONTAINER LINE PTE. LTD.**

**OF COUNSEL:**

**ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.**